UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RUDY A. YOUNG,
    Plaintiff,

v.         C.A. 16-219-M-PAS

NANCY A. BERRYHILL,
    Defendant.

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Pursuant to 42 U.S.C. § 405(g), Rudy Young seeks judicial review of the final administrative decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 9). Mr. Young contends that the Commissioner erred as a matter of law because his decision was not based on substantial evidence. (ECF No. 9 at 1). Specifically, Mr. Young claims that the Administrative Law Judge ("ALJ") erred in finding that Mr. Young's cluster headaches did not meet the durational requirement (based on improper weighing the examining physician's testimony) and failing to follow the proper standards for evaluating Mr. Young's credibility. (ECF No. 9 at 7–9).

The Appeals Council upheld the ALJ's decision. Mr. Young challenged these rulings by the Commissioner by filing this lawsuit.

## FACTS

Mr. Young was forty-three years old when his alleged disability of cluster headaches began and forty-five at the time of the ALJ's decision. Tr. 11; Tr. 143. He earned a General Equivalency Degree and last worked as a kitchen helper and laborer. Tr. 178; 32–33. Mr. Young lives in a shelter and has two children. Tr. 31. He claims that he became disabled in November of 2012 due to cluster headaches. Tr. 143. Mr. Young testified that, because of his headaches that appear out of nowhere and last about 45 minutes to an hour, he would not be able to return to his past work. Tr. 35–38. He also testified that he has two to three headaches per day and never goes a twenty-four-hour period without a headache. Tr. 40. The headaches are not predictable and can happen at any time during the day or night, and he must stop what he is doing while he is having the headaches because he is bothered by noise and bright lights. Tr. 38; Tr. 43–44.

In terms of daily activities, Mr. Young stated, "I get out and about but I basically keep it low key because the headaches will come on at any time." Tr. 41. When he gets onto a bus, he will sometimes develop a headache because of the people, the air conditioner, or the heater. *Id.* He has had to get off the bus when he has developed a headache. Tr. 44. Mr. Young testified that he enjoys walking, playing a little basketball, and reading. Tr. 40.

Mr. Young first presented to the Miriam Hospital in May of 2012 with a right ear abscess. Tr. 252. Thereafter, in August of 2012, Mr. Young presented to the

2

emergency room of Rhode Island Hospital, where the doctor indicated the Mr. Young likely suffered cluster headaches. Tr. 263.

From May of 2013 to January of 2014, Mr. Young received treatment from the Providence Community Health Center. Tr. 271–97; Tr. 347–63. In May of 2013, Dr. Simon Melnick assessed Mr. Young with episodic cluster headaches and prescribed Prednisone. Tr. 291. During follow-up visit in June of 2013, Mr. Young met with Dr. Daniel Guevara-Pineda, who also assessed Mr. Young with cluster headaches. Tr. 285.

In July of 2013, Dr. Guevara-Pineda conducted a physical examination report of Mr. Young. Tr. 265. The report indicated that Mr. Young can walk less than two hours, stand less than two hours, sit for four out of eight hours, reach occasionally, and bend occasionally. Tr. 267. Additionally, Mr. Young can lift/carry up to ten pounds occasionally, bend/stoop occasionally, and can push/pull occasionally. *Id.* As for Mr. Young's mental activities, the report indicates that he is moderately limited in remembering and carrying out simple instructions, moderately limited in maintaining attention and concentration in order to carry out tasks, moderately limited in making work-related decisions, slightly limited in his ability to interact with coworkers, moderately limited in his ability to work at a consistent pace without extraordinary supervisions, and markedly limited in his ability to respond to change in his work routine or environment. *Id.*

Dr. Guevara-Pineda ordered an MRI of Mr. Young's head in August of 2013, which revealed a right maxillary sinus mucus retention cyst but an otherwise

normal MRI. Tr. 299. In a follow-up concerning the MRI results, Dr. Guevara-Pineda continued to assess Mr. Young with cluster headaches and prescribe medication for the condition. Tr. 313.

In September of 2013, upon referral to a neurology clinic, Mr. Young met with Dr. Robert Gross, who assessed Mr. Young with cluster headaches and prescribed treatment following a normal neurological exam. Tr. 329. Mr. Young presented again to the Rhode Island Hospital upon complaints of headaches, and Dr. Otis Warren examined a CT scan of Mr. Young's head. Tr. 337. Following a negative result, which ruled out a mass, Dr. Warren assessed Mr. Young with cluster headaches and prescribed treatment. *Id.*

An October of 2013 follow-up visit with Dr. Guevara-Pineda indicated that Mr. Young had some success with the medication decreasing the pain. Tr. 313. Mr. Young continued to report headaches occurring two to three times per a day on the left side of his head. Tr. 347–48; Tr. 352–53. During follow-ups in December of 2013 and January of 2014, Dr. Guevara-Pineda continued treatment of Mr. Young for cluster headaches. *Id.*

Upon referral from Dr. Guevara-Pineda, Mr. Young began treatment with Dr. Michele Mellion of the Neurology Foundation in June of 2014. Tr. 369. Following a general examination and a neurological examination, Dr. Mellion diagnosed Mr. Young with episodic cluster headaches and drug-induced headaches. Tr. 370. She also prescribed new medication to treat Mr. Young's headaches. *Id.* During a

4

September of 2014 follow-up, Dr. Mellion noted that Mr. Young's headaches are at bay but still debilitating. Tr. 366.

His physicians discussed Botox treatment.[1] Tr. 37. Other treatments, such as oxygen therapy were discussed as well. Tr. 38. Mr. Young had been treated with medications, including Lithium, Fioricet, Amitriptyline, and Verapamil. Tr. 38–40. The Vocational Expert ("VE") testified that the limitations described by Mr. Young would rule out full-time competitive employment. Tr. 50. The ALJ asked the VE the following:

> Assume a hypothetical claimant . . . limited up to and including lifting and carrying ten pounds occasionally, less than ten pounds frequently, walking less than two hours in an eight-hour workday; standing less than two hours in an eight-hour workday; sitting four hours in an eight-hour workday; occasional reaching, occasional bending, occasional stooping . . . limited to performing simple tasks, simple work-related decision; and would be unable to respond to changes in the work setting.

Tr. 49–50. The VE testified that if someone is unable to tolerate customary work pressure due to chronic pain and being off task at least one hour per day in addition to normal work breaks, it would preclude full-time competitive employment. Tr. 50.

The ALJ found that Mr. Young's migraines are a medically determinable impairment. Tr. 20. However, the ALJ concluded that Mr. Young does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) his ability to perform basic-work related activities for twelve consecutive months. Tr. 21. Accordingly, the ALJ concluded that Mr. Young is not disabled within the meaning of the Social Security Act. *Id.*

---

[1] Mr. Young is working with his insurance company to approve the treatment.

5

## STANDARD OF REVIEW

"We review questions of law de novo, but defer to the Commissioner's findings of fact, so long as they are supported by substantial evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000). The findings are supported by substantial evidence "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). The Commissioner, not the Court, decides conflicts of evidence. *Id.*

## ANALYSIS

Mr. Young argues that—among other things—the ALJ erred in assigning substantial weight to the non-examining physicians and minimal weight to the treating physician. (ECF No. 9 at 8). Crediting the non-examining physicians and discrediting the treating physician proved seminal in the ALJ's decision to deny benefits based on lack of severity, which is a "no more than a *de minimis*" hurdle for claimants. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1125 (1st Cir. 1986). The Court begins with the treating physician's opinion.

### A. Treating Physician

A treating physician's opinion on the severity of an impairment receives controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). When the ALJ does not

6

afford controlling weight to the treating physician, the ALJ must weigh the medical opinion based on six factors: (1) the "[l]ength of the treatment relationship and the frequency of examination," § 404.1527(c)(2)(i); (2) the "[n]ature and extent of the treatment relationship," § 404.1527(c)(2)(h); (3) the supportability of the opinion, § 404.1527(c)(3); (4) the consistency of the opinion "with the record as a whole," § 404.1527(c)(4); (5) the specialization of the source, § 404.1527(c)(5); and (6) "[o]ther factors," § 404.1527(c)(6). Here, the ALJ afforded minimal weight to Dr. Guevara-Pineda's medical opinions of Mr. Young, finding Dr. Guevara-Pineda's opinions inconsistent with the record as a whole and formed over a year ago. Tr. 21.

Troubling, the ALJ discounted the treating physician's medical opinion, in part, because Dr. Guevara-Pineda formed the opinion over a year prior to the proceedings. *Id.* While Mr. Young first received treatment at the Providence Health Center in May of 2013 and with Dr. Guevara-Pineda in June of 2013, his treatment with Dr. Guevara-Pineda continued into January of 2014. Tr. 347–48. Dr. Guevara-Pineda's diagnosis and treatment for cluster headaches, however, remained consistent through the January appointment. *Id.* After which, Dr. Guevara-Pineda referred Mr. Young to a neurologist. Tr. 369. One non-examining physician reviewed Mr. Young's records in October of 2013, and the other reviewed his records in March of 2014. Tr. 57; Tr. 73. This timeline places Dr. Guevara-Pineda's evaluation at less than a year and in between that of the non-examining physicians.

Of greater import, the ALJ wrongly analyzed the record when he determined that Dr. Guevara-Pineda's opinion was inconsistent with the medical record. While the Court does not don a white coat and interpret medical records, it does consider the basis for the ALJ's assignment of weight. The ALJ, in interpreting the record, placed an inordinate amount of weight on negative test results, such as the CT scan of Mr. Young's brain. Tr. 20. The medical records indicate that the imaging of Mr. Young's brain occurred to "rule out mass," not to rule out the condition or determine the severity of Mr. Young's cluster headaches. Tr. at 337. In fact, the disposition following the negative CT scan included a likely diagnosis of cluster headaches with no comment concerning severity. Tr. at 338. Additionally, following a negative MRI, Mr. Young's treating physician, Dr. Guevara-Pineda, continued to assess Mr. Young with cluster headaches. Tr. 313. In essence, the ALJ reinterpreted the findings of medical tests, reached the opposite conclusion of the treating physicians who interpreted the tests, and used his interpretation to discount the opinion of one of those physicians. The Court, furthermore, finds the ALJ's position inapposite, as the ALJ credited the existence of the impairment—that is, cluster headaches.

To the extent that the ALJ relied upon Mr. Young's daily activities in weighing the opinion and evidence of record, the Court writes to lend clarity. The ALJ concluded that Mr. Young's daily activities—living in a shelter, doing chores, shopping for necessities, taking public transportation, attending church and social groups, cooking, reading, playing basketball, and walking—do not support the allegation that his impairment is functionally disabling. Tr. 20. The conclusion

that Mr. Young is not disabled, however, remains untethered to Mr. Young's daily activities. Mr. Young's condition essentially allows him to function normally until he gets a cluster headache. Tr. 38. The onset of a cluster headache incapacitates him for a period of about forty-five minutes. Tr. 35. Accordingly, the activities, which he stops when a cluster headache occurs, do not disprove the severity of the condition.

For these reasons, the ALJ erred in deciding to apply little weight to the treating physician.

### B. Non-Examining Physicians

"[T]he weight given to a non-examining opinion 'will depend on the degree to which [it] provide[s] supporting explanations.'" *Ormon v. Astrue*, 497 F. App'x 81, 84 (1st Cir. 2012) (per curiam) (alterations in original) (quoting 20 C.F.R. § 404.1527(c)(3)). In this case, the non-examining physicians provided a conclusory assessment—that Mr. Young's impairment is not severe—and a conclusory explanation—that the "impairment does not significantly limit physical or mental ability to do basic work activities." Tr. 57; Tr. 73. One of the non-examining physicians, Dr. Donn Quinn, apparently found that medical evidence substantiated Mr. Young's complaints concerning the "intensity, persistence, and functionally limiting effects." Tr. 57.

The ALJ chose to credit the non-examining physicians because their opinions, in the ALJ's conclusory words, "are supported by the evidence of record and based on their particular and detailed knowledge of the standard of disability as set forth

by the Commission." Tr. 21. As discussed above, the ALJ wrongly interpreted negative test results in considering the medical record.

Under the particular circumstances of the case, the ALJ erred in affording the non-examining physicians "substantial evidentiary weight" and affording Dr. Guevara-Pineda's opinion minimal weight. The opinions of the non-examining physicians provided little more than boilerplate rationale, which simply cannot receive substantial weight. *See Ormon*, 497 F. App'x at 84.

### C. Mr. Young's Credibility

On remand, in addition to reevaluating the opinions of the physicians, the ALJ shall also reevaluate Mr. Young's credibility consistent with this Court's order. That is, the ALJ shall reconsider Mr. Young's credibility in light of the medical record and Mr. Young's daily activities as described herein.

### CONCLUSION

This Court, pursuant to its authority in 42 U.S.C. §405(g), reverses the ALJ's decision and remands this matter for further consideration as well as for attorney's fees. The Court GRANTS Plaintiff's Motion to Reverse, (ECF No. 9), and DENIES the Defendant's Motion to Affirm, (ECF No. 10).

SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge


Date: February 13, 2017